# EXHIBIT H

KeyCite Yellow Flag - Negative Treatment
Distinguished by Skrelja v. State Automobile Mutual Insurance Company, E.D.Mich., June 20, 2016

2013 WL 5731840
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Elizabeth A. NULL, Plaintiff–Appellant,
v.
AUTO–OWNERS INSURANCE COMPANY, Defendant–Appellee,
and
Berkey Insurance Agency, Inc., and Wells Fargo Bank NA, Defendants.

Docket No. 308473.

Cass Circuit Court; LC No. 10–000228–NI.

Before: FITZGERALD, P.J., and O'CONNELL and SHAPIRO, JJ.

Opinion

PER CURIAM.

*1 Plaintiff appeals by right the trial court's grant of summary disposition in favor of defendant Auto–Owners Insurance Company. Because we find the insurance policy at issue did not cover plaintiff's losses, we affirm.

This insurance dispute arose from a 2009 fire that destroyed a home in Cassopolis, Michigan. Plaintiff and her late husband were buying the home from plaintiff's brother-in-law, Lonnie Null. Lonnie had obtained property insurance from defendant on the home, but had not made any payments on the mortgage or on the insurance premium escrow since at least 1998. Instead, plaintiff and her husband were making the mortgage payments and paying the insurance premium escrow. Lonnie stayed in the home with plaintiff and her husband sporadically for a few days or weeks at a time, through approximately 2004. When the fire occurred in 2009, Lonnie had not lived in the home for several years.

After the fire, plaintiff sought insurance coverage from defendant for property loss, personal property loss, and substitute living expenses. Defendant denied the claim on the ground that Lonnie, who was the named insured, did not reside in the home. Plaintiff then sued defendant for breach of contract. The trial court initially granted partial summary disposition in favor of plaintiff. However, after hearing plaintiff's case on damages in a bench trial, the trial court reversed its initial grant of summary disposition and granted summary disposition in favor of defendant under MCR 2.116(I)(2).

We review de novo the trial court's grant of summary disposition. *Dancey v. Travelers Prop. Cas. Co.,* 288 Mich.App 1, 7; 792 NW2d 372 (2010). In addition, we review de novo the trial court's interpretation of the insurance policy at issue. *DeFrain v. State Farm Mut. Automobile Ins. Co.,* 491 Mich. 359, 366–367; 817 NW2d 504 (2012). We must enforce the insurance policy according to its terms. *Liparato Constr., Inc. v. Gen. Shale Brick, Inc.,* 284 Mich.App 25, 35; 772 NW2d 801 (2009).

The analysis begins with a determination of whether the policy provides coverage for the claimed loss. *Heniser v. Frankenmuth Mut. Ins. Co.,* 449 Mich. 155, 161; 534 NW2d 502 (1995). The policy defined the insured premises as "the residence premises," and in turn defined "residence premises" as:

> a. the one or two family dwelling where **you** [the named insured] reside, including the building, the grounds and other structures on the grounds; or
>
> b. that part of any other building where **you** reside, including grounds and structures; which is described in the Declarations.

The policy stated that it covered "**your** dwelling located at the **residence premises** including structures attached to that dwelling. Thisdwelling [sic] must be used principally as **your** private residence."

The controlling Michigan case law establishes that defendant properly denied coverage on the basis of the policy's residence requirements. In *Heniser,* our Supreme Court explained that when a property insurance policy includes a "residence premises" definition, there is no coverage if the insured does not reside at the property. The property at issue in *Heniser* was a vacation home that the insured had sold on a land contract, and the insured did not live in the home. *Id.* at 157. The Court held, "[w]e agree with those courts that have found the exact language of this policy to unambiguously require the

insured to reside at the insured premises at the time of the loss." *Id.* at 168.

*2 This Court applied *Heniser* to confirm a denial of insurance coverage in *McGrath v. Allstate Ins. Co.,* 290 Mich.App 434; 802 NW2d 619 (2010). The *McGrath* Court determined that the residence premises requirement precluded coverage unless the insured lived in the premises at the time of the loss. *Id.* at 441. The Court rejected the argument that the insured could be deemed to reside in the premises if the insured intended to return at some time in the future. *Id.* at 442. The Court determined that the term "reside" had no technical meaning in the policy, and that the policy plainly required the insured to live in the premises in order to obtain coverage. *Id.* at 442–443.

The *McGrath* Court also addressed an argument similar to one presented by plaintiff in this case, i.e., that a change in the insured's mailing address placed the insurance company on notice of a potential change in the occupancy status of the covered property. The Court first noted, "it is common in the context of insurance contracts that the insured's billing address is different from the address of the property insured." *Id.* at 446. The Court then explained:

> a person may change a billing address for myriad reasons that would not raise a suspicion that residency has changed. As one example, the children of an elderly person may decide to assume the responsibility for paying a parent's bills, and thus make arrangements for those bills to be sent somewhere other than the parent's residential address. [*Id.* at 447.]

The Court concluded that the change in the billing address did not put the insurance company on notice that the insured no longer lived in the property. *Id.* at 626.

*Heniser* and *McGrath* control the coverage question in this case. There is no ambiguity in the policy language at issue; the policy limits coverage to the dwelling in which the insured resides and which is used as the insured's primary residence. The record confirms that Lonnie did not reside in the home at the time of the fire. Plaintiff testified in deposition that Lonnie lived at the Cassopolis house with plaintiff and her husband for approximately one month after being released from jail in 1997. After that, Lonnie "bounced around a lot," meaning he stayed sporadically at the Cassopolis house for a few days at a time, and stayed there for two weeks in approximately 2005. Nothing in the record indicates that Lonnie resided in the home after 2005. Accordingly, the home did not fall within the policy definition of covered property, and defendant properly denied coverage.

Plaintiff argues that this case is factually distinguishable from *Heniser* and *McGrath*. Specifically, plaintiff points out that in this case, defendant paid at least two property damage claims prior to the fire. According to plaintiff, defendant knew or should have known that Lonnie did not live in the home at the time the prior losses occurred. Plaintiff argues that defendant's prior payment on the claims waived any subsequent denial of coverage. Plaintiff also argues that this Court should equitably estop defendant from denying coverage.

*3 Plaintiff's arguments are misplaced. To establish a waiver of the policy provisions, plaintiff must show that defendant intentionally abandoned a known right. See *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.,* 469 Mich. 362, 374; 666 NW2d 251 (2003) (defining waiver). In this case, there is no evidence that defendant intentionally abandoned the policy's coverage requirements. Moreover, the policy precluded any implied waiver: "CHANGES [.] This policy and the Declaration include all the agreements between **you** and **us** or our agency relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**."

Similarly, plaintiff has not established that the elements of equitable estoppel apply in this case. Equitable estoppel arises when "(1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Conagra, Inc. v. Farmers State Bank,* 237 Mich.App 109, 141; 602 NW2d 390 (1999). To establish the first element of equitable estoppel, plaintiff would have to demonstrate that defendant induced plaintiff to believe that Lonnie's residential status was irrelevant to the policy coverage. The record contains no evidence to support the first element. Instead, the record evidence is ambiguous concerning whether Lonnie may have been living in the home in 2001 or 2004 when defendant paid the prior two claims. The record is also ambiguous as to whether anyone ever expressly informed defendant about Lonnie's residential status. Given the lack of evidence regarding whether defendant knew of Lonnie's residential status, plaintiff cannot establish that defendant induced plaintiff to believe that Lonnie's status was irrelevant to the policy coverage. Accordingly,

plaintiff's equitable estoppel claim fails.

Plaintiff also maintains that she is entitled to coverage for personal property loss and for her substitute living expenses. The policy covers personal property losses only for insureds, as defined in the policy:

c. Coverage C—Personal Property

(1) Covered Property

We cover:

(a) personal property owned or used by any **insured** anywhere in the world including property not permanently attached to or otherwise forming a part of realty.

(b) at **your** option, personal property owned by others while it is in that part of the **residence premises** occupied by any **insured.** [Policy]

Plaintiff is not an insured within the meaning of the policy. Plaintiff therefore cannot recover for personal property damage arising from the fire at the home.

Similarly, plaintiff cannot recover substitute living expenses she may have incurred after the fire. The policy's living expenses coverage reads:

d. Coverage D—Additional Living Expense and Loss of Rents

*4 If a covered loss makes **your residence premises** unfit to live in, **we** will pay, at **your** option [reasonable living expenses or fair rental value.]

We have concluded that the home does not fall within the policy definition of "residence premises." Accordingly, plaintiff cannot recover additional living expense.

Affirmed.

SHAPIRO, J. (dissenting).

*4 I respectfully dissent. I would remand this case for a trial to determine whether defendant should be equitably estopped from denying coverage of plaintiff's fire loss.[1]

Defendant, Auto–Owners Insurance Company, does not dispute that, for approximately 15 years, it was paid to insure the home located at 17285 Williamsville Street in Cassopolis and that the insurance policy was in effect when the home was destroyed by fire on April 11, 2009. Although there was no suspicion of arson, fraud, or other illegal action by the property owner or residents, defendant refused to provide coverage for the loss. Defendant based its refusal on a clause in the insurance policy that requires the insured to reside in the home at the time of a compensable loss.

The procedural chronology of this case is significant. After defendant denied the insurance claim, plaintiff sued for breach of contract. Defendant answered that it was not obligated under the policy pursuant to the residency clause. Both parties filed motions for summary disposition on the question of liability. Plaintiff raised two arguments: first, that the policy provided for coverage as written; second, that even if the policy did not provide for coverage as written, defendant's course of conduct as to other claims over several years estopped defendant from relying on the residency clause to deny plaintiff's claim. The trial court initially found for plaintiff, concluding that the policy provided coverage and directed that the case proceed to trial on damages only. However, following the trial on damages, the court changed its view of the policy language, vacated its prior order, and issued an order granting summary disposition to defendant.

Significantly, the trial court never addressed plaintiff's estoppel claim in either of its orders. In its first ruling on the cross-motions for summary disposition, the court ruled that plaintiff was entitled to coverage under the policy, and, therefore, did not reach the estoppel question. In its second ruling on the cross-motions, the court stated that it had changed its view of the policy language, but again did not address the estoppel issue. Accordingly, plaintiff filed a motion for reconsideration, noting this remaining issue. The trial court denied the motion for reconsideration without explanation.

Therefore, although the issue of estoppel was raised below, the trial court failed to rule on it. Because the evidence creates a question of fact whether the elements of estoppel are present, we must remand the case for trial.

In 1994, Lonnie Null, plaintiff's brother-in-law, obtained an insurance policy from defendant for the home he owned at 17285 Williamsville Street in Cassopolis. Lonnie obtained the policy through Berkey Insurance Agency. Three years later, in February 1997, Lonnie entered into a land contract to sell the home to plaintiff, Elizabeth Null, and her husband, Thomas Null,[2] Lonnie's brother. The contract provided that plaintiff and her husband would assume the mortgage and be responsible for the payments. The land contract was recorded with the

Cass County Register of Deeds in 1997. As is typical in land contracts, the seller remained the deed holder and legal owner while plaintiff and her husband became equitable owners. The mortgagee-bank declined to add plaintiff and her husband's names to the mortgage. Therefore, the mortgage remained Lonnie's name, as the legal owner.

**\*5** The mortgagee-bank established an escrow account and included the cost of insurance premiums in its monthly mortgage bill. For some time, plaintiff's husband paid the mortgage and escrow charges directly. Eventually, after Lonnie gave power of attorney to Martha Allen (plaintiff's mother), plaintiff and Martha established a joint account into which plaintiff would deposit funds sufficient to pay the monthly mortgage and insurance bill. Martha would then withdraw these funds and pay the monthly mortgage and insurance bill.

By December 6, 2000, Lonnie was having trouble managing his own affairs due to alcoholism and his criminal activities. Accordingly, on that date he executed a notarized power of attorney to Allen, plaintiff's mother, that explicitly stated that he was residing in Indiana, not in Cassopolis, Michigan. The document signed by Lonnie stated:

> I, Lonnie A. Null, *residing at 111 N. 3rd St. Goshen., In.* Grant a power of attorney to Martha E. Allen, residing at 24710 Idlewild Ave. Elkhart In. for the purpose of handling affairs in reference to property located at:
>
> 17285 Williamsville Street
>
> Cassopolis Michigan.
>
> [Emphasis added.]

Martha Allen testified that she informed Berkey of Lonnie's power of attorney and directed that all renewals and other documentation be sent to the Indiana residence. Moreover, sometime between 2002 and 2003, defendant changed the address on the policy from the Cassopolis address to 24710 Idlewild Avenue, Elkhart, Indiana.

Allen testified that she told Berkey that the address change was necessary because "Lonnie wasn't—he wasn't living [at the insured home], [and] he wasn't easy to get ahold of when he wasn't there." At his deposition, Lonnie testified that, following the land contract sale, he "maintained several residences really[,]" including stays with his mother, "a lady friend in Goshen[,]" jail and sleeping drunk under bridges. He admitted that, "I was drunk for about twelve years[,]" and "don't remember much of anything during that period of time" between 1994 and 2008. Plaintiff testified that Lonnie had not lived at the insured home since 1997. She stated that Lonnie stayed there on several occasions, but never for a significant amount of time, and not at all since a two-week stay in 2005.

Prior to the instant claim, two other losses under the policy were reported to defendant. In 2001, a claim was made for a ceiling leak. Defendant sent an insurance adjuster to review the damage, and Allen testified that she showed the adjuster the power of attorney. At that time, the insurance policy contained the same language on which defendant now relies, i.e., that the insured had to reside at the home to be eligible for coverage. Nevertheless, defendant paid the claim and did not indicate that Lonnie's move to Indiana was grounds for denial. Three years later, in 2004, Allen called in a claim for another ceiling leak. Defendant again paid the claim, despite the fact that Lonnie was not residing at the home. Finally, in 2006, defendant sent a $74 check to Lonnie for overpayment. The check and accompanying letter listed Lonnie's address as the 24710 Idlewild Avenue, Elkhart, Indiana.

**\*6** When fire destroyed the home on April 11, 2009, Allen reported the fire to defendant. In October 2009, defendant's agent denied coverage in a letter stating, "It is my understanding you have not lived at this location in some time. In fact, documents I have received show this home was sold to Thomas Null and Elizabeth Null in February 1997." The letter concluded, "Because my investigation has revealed you do not live at this location, Auto–Owners Insurance Company must respectfully deny coverage for the damage to this location."

"The principle of estoppel is an equitable defense that prevents one party to a contract from enforcing a specific provision contained in the contract." *Morales v. Auto–Owners Ins. Co.,* 458 Mich. 288, 295; 582 NW2d 776 (1998). "For equitable estoppel to apply, ... [plaintiff] must establish that (1) ... [defendant]'s acts or representations induced ... [plaintiff] to believe that the ... [residency] clause would not be enforced and that coverage would be provided, (2) ... [plaintiff] justifiably relied on this belief, and (3) ... [plaintiff] was prejudiced as a result of its reliance on its belief that the clause would not be enforced and coverage would be provided." *Grosse Pointe Park,* 473 Mich. at 204. In *Morales,* our Supreme Court held that an insurance company may not rely on a policy provision where its failure to previously enforce the provision " 'induced in the mind of the insured an honest belief that the [relevant] terms and conditions of the policy ... [would] not be enforced[.]' " 458 Mich. at

298, quoting *Pastucha v. Roth,* 290 Mich. 1, 9; 287 NW 355 (1939) (citations omitted). In *Pastucha,* the Court held that by accepting late premium payments in the past, the defendant-insurer waived its right to later decline coverage on the grounds of that the plaintiff did not timely pay his premium. 290 Mich. at 12–13.

A reasonable trier of fact could conclude that plaintiff established the elements of equitable estoppel. As early as 2000, Allen informed defendant that Lonnie no longer resided in the home. The land contract evidencing that Lonnie sold the home had been publically recorded in 1997. There is also evidence that, several years before the fire, Allen specifically informed defendant that Lonnie was living in Indiana. Nevertheless, defendant still paid claims under the policy in 2001 and 2004. A reasonable trier of fact could conclude that defendant did so even after receiving notice that the insured no longer resided there, and that plaintiff justifiably expected that the residency clause was not being enforced and would not be enforced in the future.

The majority relies on *McGrath v. Allstate,* 290 Mich.App 434; 802 NW2d 619 (2010), for the proposition that a reporting a change in billing address is not sufficient to create a duty on the part of the insurer to further inquire as to the insured's residence before renewal of the policy. However, *McGrath* is distinguishable because the policy in that case contained a provision stating that the insured must "inform [the insurer] of any change in title, use or occupancy of the residence premises." *Id.* at 440. No such provision is present in the instant policy. Defendant renewed the policy annually despite its knowledge that Lonnie was receiving his mail not merely at a different address, but in a different state. Moreover, the *McGrath* court relied on the public policy view that an insurer should not be required to take on a greater risk that than to which it originally agreed, and that the insured risk is "affected by the presence of the insured in the dwelling and the associated activities stemming from this presence. Unoccupied or vacant homes, with no resident present to oversee security or maintenance, are at a greater risk for break-ins, vandalism, fire and water damage[.]" *Id.* at 444. However, the instant case does not involve a vacant home or other unplanned-for risk; indeed, the home was resided in by a responsible couple rather than by an alcoholic, unemployed, petty criminal. It is difficult to imagine how the defendant's risk analysis would have changed had it known that plaintiff and her husband were residing in the home rather than Lonnie, though it is possible that defendant would have been sufficiently pleased with the change so as to lower the premiums.

*7 A reasonable trier of fact could conclude that, despite having been informed that Lonnie Null no longer resided in the home, defendant paid two claims in 2001 and 2004. In light of this genuine issue of material fact controlling the estoppel issue, and because the trial court never addressed the estoppel issue, I would reverse the court's grant of summary disposition in favor of defendant and remand for trial on plaintiff's equitable estoppel claim. Accordingly, I respectfully dissent.

**All Citations**

Not Reported in N.W.2d, 2013 WL 5731840

Footnotes

1    I agree with the majority's conclusion that the residency clause, if applicable, allows defendant to deny the claim pursuant to our Supreme Court's opinion in *Heniser v. Frankenmuth Mut. Ins. Co.,* 449 Mich. 155; 534 NW2d 502 (1995).

2    Thomas Null died in 2009.