UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEATRICE KELLY and
RALPH KELLY,

     Plaintiffs,

v.

    Case No. 2:18-cv-10982
    Hon. Gershwin A. Drain
    Magistrate Judge R. Steven Whalen

METROPOLITAN GROUP
PROPERTY AND CASUALTY
INSURANCE COMPANY,

     Defendant.

_____/

| | |
|---|---|
| MELAMED, DAILEY, LEVITT & MILANOWSKI, P.C. | SEGAL McCAMBRIDGE SINGER & MAHONEY |
| By: Joseph L. Milanowski (P47335) | By: Kerry Lynn Rhoads (P55679) |
| *Attorney for Plaintiffs* | *Attorney for Defendant* |
| 26611 Woodward Avenue | 29100 Northwestern Highway, Suite 240 |
| Huntington Woods, MI 48070 | Southfield, MI 48034 |
| T: (248) 591-5000  F: (248) 541-9456 | T: (248) 994-0060/F: (248) 994-0061 |
| joemilanowski@mdlm-pc.com | krhoads@smsm.com |

_____/

## PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## ORAL ARGUMENT REQUESTED

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES......................................................................... iii

ISSUES PRESENTED................................................................................v

I.   INTRODUCTION ...............................................................................1

II.   STATEMENT OF FACTS....................................................................1

III.   LAW AND ARGUMENT.....................................................................4

   A.  MetLife's Policy Contains Several Provisions Which Establish an Insured May "Reside" in More Than One Location at the Time of a Loss and Still Be Covered by the Policy ..............................................................................4

   B.  MetLife's Policy Regarding Residency Is Ambiguous and Should Be Construed Against the Drafter and In Favor of the Insured. ................................12

   C.  The Michigan Cases Cited by MetLife Regarding Residency Requirements of Property Insurance Contracts are Distinguishable Because They Have Specific Limiting Language Not Found in MetLife's Policy............................................14

   D.  Coverage Is Not Excluded Due to the "Business Purpose" Exception in the Policy. ...................................................................................................20

IV.   CONCLUSION ...............................................................................22

# INDEX OF AUTHORITIES

## Cases

*Auto Club Ins Ass'n v DeLaGarza*
433 Mich 208; 444 NW2d 803 (1989)......................................................13

*Auto-Owners Ins. Co. v. Seils*
310 Mich App 132; 871 NW2d 530 (2015)..............................................5

*Auto-Owners v. Churchman*
440 Mich 560; 489 NW2d 431 (1992)................................................5, 13

*Banks v. Auto Club Group Ins. Co.*
unpublished, decided June 18, 2015
   Michigan Court of Appeals Docket No. 320985 ......................... 18, 19

*Curry v Jackson Circuit Court*
151 Mich App 754; 391 NW2d 476 (1986)..............................................14

*Durham v. Auto Club Group Ins. Co.*
unpublished, decided December 13, 2016
   Michigan Court of Appeals Docket No. 329667 ......................... 18, 19

*Heniser v. Frankenmuth Mut. Ins. Co.*
449 Mich 155; 534 NW2d 502 (1995)............................. 4, 14, 15, 16, 18

*McGrath v. Allstate Ins. Co.*
290 Mich App 434; 802 NW2d 619 (2010)................................ 4, 15, 16, 17, 18

*Mich Millers Mut Ins Co v Bronson Plating Co*
197 Mich App 482; 496 NW2d 373 (1992)
   *aff'd*, 445 Mich 558; 519 NW 2d 864 (1994)......................................13

*Reaume & Silloway, Inc. v. Tetzlaff*
315 Mich 95; 23 NW2d 219 (1946)........................................................20

*Rednour v Hastings Mut Ins Co*
468 Mich 241; 661 NW2d 562 (2003).....................................................4

*Royce v Citizens Ins Co*
219 Mich App 537; 557 NW2d 144 (1996)..............................................................13

*Tenneco Inc. v. Amerisure Mut. Ins. Co.*
281 Mich App 429; 761 NW2d 846 (2008)..............................................................4

*Tienda v. Integon Nat'l Ins. Co.*
300 Mich App 605; 834 NW2d 908 (2013)..............................................................20

*Vushaj v Farm Bureau Gen Ins Co of Mich*
284 Mich App 513; 773 NW2d 758 (2009)..............................................................13

## **<u>Other Authorities</u>**

*Merriam-Webster Dictionary*......................................................................21

## <u>ISSUES PRESENTED</u>

A. WHETHER METLIFE'S POLICY CONTAINS SEVERAL PROVISIONS WHICH ESTABLISH AN INSURED MAY "RESIDE" IN MORE THAN ONE LOCATION AT THE TIME OF A LOSS AND STILL BE COVERED BY THE POLICY.

**Plaintiffs Answer:**      **YES**

**Defendant Answers:**    **NO**

B. WHETHER METLIFE'S POLICY REGARDING RESIDENCY IS AMBIGUOUS AND SHOULD BE CONSTRUED AGAINST THE DRAFT AND IN FAVOR OF THE INSURED.

**Plaintiffs Answer:**      **YES**

**Defendant Answers:**    **NO**

C. WHETHER THE MICHIGAN CASES CITED BY METLIFE REGARDING RESIDENCY REQUIREMENTS OF PROPERTY INSURANCE CONTRACTS ARE DISTINGUISHABLE BECAUSE THEY HAVE SPECIFIC LIMITING LANGUAGE NOT FOUND IN METLIFE'S POLICY.

**Plaintiffs Answer:**      **YES**

**Defendant Answers:**    **NO**

D. WHETHER COVERAGE IS NOT EXCLUDED DUE TO THE "BUSINESS PURPOSE" EXCEPTION IN THE POLICY.

**Plaintiffs Answer:**      **YES**

**Defendant Answers:**    **NO**

## I.   INTRODUCTION

This case arises out of Defendant Metropolitan Group Property and Casualty Company's ("MetLife's") denial of Plaintiff Beatrice Bragg Kelly's property insurance claim following a cooking-related fire that significantly damaged her home in Eastpointe, Michigan. MetLife issued two denial letters to Ms. Kelly after completing its long and presumably thorough claim investigation. In both letters, MetLife denied Ms. Kelly's claim, primarily related to an allegation that she did not "reside" at the insured home. Ms. Kelly, however, asserts that, as is required by the insurance policy, she used the insured dwelling as a private residence, so the claim should be paid.

MetLife has filed a Motion for Summary Judgment, claiming that there is no genuine issue of material fact that Ms. Kelly was not "residing" in her Eastpointe, Michigan home at the time of the loss. As that is not what is required of her, the motion should be denied for the reasons discussed in more detail below.

## II.   STATEMENT OF FACTS

### *Ms. Kelly and the Eastpointe Home*

Ms. Kelly has lived in and used 16085 Sprenger Avenue, Eastpointe, Michigan ("the Eastpointe home") as a private residence since she purchased it in 2005. (**Exhibit A,** Mortgage excerpts; **Exhibit B,** Beatrice Kelly EUO transcript, pp.

9-10). In 2009 she married Ralph Kelly and he moved into the Eastpointe home with Ms. Kelly, as well as, eventually, their two children. (**Exhibit B,** pp. 6-7, 9).

Ms. Kelly has long been employed in the banking industry, most recently by 5/3 Bank as a Community Reinvestment Act ("CRA") Strategies Director. She has worked for 5/3 Bank, which is based in Cincinnati, Ohio, since 2011. (**Exhibit B,** pp. 11-12, 15). Initially, Ms. Kelly was allowed by 5/3 Bank to work from the Eastpointe home, but in 2014, 5/3 Bank promoted Ms. Kelly and required her to train for an indeterminate time period at its offices in Cincinnati. (**Exhibit B,** pp. 13-15). Therefore, in 2014, Ms. Kelly and her family obtained an apartment in the Cincinnati area. However, for work and family reasons, she would need to occasionally go back and forth between the Ohio apartment and the Michigan home. (**Exhibit B**, pp. 9-11, 14-17, 22-23). The Kelly family moved most of their personal property from their Michigan residence to the Cincinnati area apartment; however, they did leave behind some appliances, a couch set, a large screen TV and some miscellaneous personal belongings. (**Exhibit C,** Beatrice Kelly deposition transcript, pp. 26-27; **Exhibit B,** p. 21; **Exhibit D,** Melaundra Floyd deposition transcript[1]).

Since she had to travel to southeast Michigan occasionally for work and she had close relatives she would visit regularly, Ms. Kelly planned to continue to

---

[1] The deposition of Melaundra Floyd was taken November 5, 2018, but the transcript has not yet been received from the court reporter. A copy of the transcript will be filed separately upon Plaintiff's receipt of the same, with referenced cites highlighted for the Court's convenience.

partially reside at the Eastpointe home. She also wanted to eventually return full-time to live and work at the Eastpointe home. (**Exhibit B,** pp. 22-25; **Exhibit C,** pp. 43-46; **Exhibit D**). Therefore, in the meantime, Ms. Kelly arranged for a long-time friend, Melaundra Floyd, to live and maintain a presence in the Eastpointe home while Ms. Kelly was not there in exchange for a modest rent payment by Ms. Floyd. Since Ms. Floyd usually worked an overnight shift, Ms. Kelly would use Ms. Floyd's bedroom furniture set when staying overnight at the Eastpointe home. (**Exhibit B,** pp. 14-19, 57-58; **Exhibit C**, pp. 42-43; **Exhibit D**).

Ms. Kelly insured the Eastpointe home with MetLife starting on September 22, 2016. The full policy, no. 1470006250, with effective dates of 9/22/16 to 9/22/17 ("the Policy"), is attached to MetLife's Motion as *Exhibit B*.

On December 3, 2016, Melaundra Floyd's daughter, CaSandra Floyd, whom was then also staying at the Eastpointe home, fell asleep while cooking, resulting in significant fire damage to the home. (**Exhibit E,** Eastpointe Fire Department Incident Report).

### *Investigation/Denial of Claim*

After the fire, Ms. Kelly timely made a claim to MetLife for the fire damage. Ms. Kelly fully cooperated with MetLife's intensive investigation, including giving numerous statements and providing voluminous documents at MetLife's request. (See, e.g., **Exhibit B,** pp. 68-75).

After months of conducting its presumably thorough investigation, MetLife apparently obtained the requisite facts it believed were needed and denied Ms. Kelly's claim. (**Exhibit F,** MetLife's 3/20/17 and 3/27/17 Denial Letters). When it finally issued its two (2) denial letters, MetLife cryptically apprised Ms. Kelly that it was not paying her claim due to alleged misrepresentations in her insurance application and during the claim process relating to "residency" at the Eastpointe home. This lawsuit followed.

## III.   LAW AND ARGUMENT

### A. MetLife's Policy Contains Several Provisions Which Establish an Insured May "Reside" in More Than One Location at the Time of a Loss and Still Be Covered by the Policy.

Interpretation of an insurance contract is a question of law. *Rednour v Hastings Mut Ins Co*, 468 Mich 241, 243; 661 NW2d 562 (2003). "The primary goal in the interpretation of an insurance policy is to honor the intent of the parties." *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 281 Mich App 429, 444; 761 NW2d 846 (2008). An insurance contract is construed in the same manner as other contracts, giving undefined terms their plain and ordinary meaning and consulting a dictionary to do so, if necessary. *McGrath v. Allstate Ins. Co.*, 290 Mich App 434, 439; 802 NW2d 619 (2010). Where the policy language is clear, courts are bound to enforce the policy as written. *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich 155, 160; 534 NW2d 502 (1995). However, a "court must look at the contract <u>as a whole</u> and give

meaning to all terms." *Auto-Owners v. Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992) (emphasis added). "A contract is ambiguous when, after considering the entire contract, its words may reasonably be understood in different ways." *Auto-Owners Ins. Co. v. Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). "An ambiguous provision in an insurance contract is construed against the insurer and in favor of coverage. *Id.*, at 146.

Reading the Policy in this case as a whole, it clearly extends coverage for the insured premises while the insured uses it "as a private residence". The Policy explicitly grants permission to the insured to allow the residence premises to be vacant or unoccupied by the insured without limit of time. Although extended vacancy may affect certain coverages (such as for vandalism, theft, or freezing pipes), the clear and plain language of the Policy extends coverage, including for fire damage, while the insured is not occupying the insured premises. Defendant would have to concede that the Policy contemplates that a named insured may be away from the property for some period (i.e., wintering in Florida or taking an extended vacation or sabbatical) and still maintain coverage.

Additionally, considering MetLife's entire Policy, it does not expressly exclude coverage when an insured has more than one residence. Instead, it clearly contemplates that the "residence premises" may not be the insured's sole or principal

place of residence. Start with the relevant definitions of "insured premises,"

"residence premises" and "business" included by MetLife in its Policy:

> **"Insured Premises"** means:
>
> 1. the **residence premises** described in the Declarations;
>
> \*\*\*
>
> 3. any premises acquired by **you** during the term of this Policy and used by **you** as a residence;
>
> \*\*\*
>
> 5. any premises not owned by **you** but where **you** may be temporarily residing;
> 6. any part of a premises occasionally rented to **you** for other than **business purposes;**
>
> \*\*\*
>
> **"Residence Premises"** means:
>
> 1. a one, two, three, or four family dwelling _used as a private residence by **you**_ and named in the Declarations…;
>
> This _does not include_ any portion of a premises used for **business purposes**.
>
> (**Exhibit G,** pp. 1-2) (emphasis added)

MetLife defines "**Business Purposes",** in part, as:

> 2.   **your** property rented or held for rental by **you**. Rental of the **residence premises** is not considered business when:
>> **A.**   it is rented occasionally for *use as a residence*…

(*Id.*) (emphasis added)

Per MetLife's definitions, an insured may obtain and be residing at other locations besides the one described on the declaration page and still be covered under the Policy. Clearly, the definitions do not limit the insured to one residence; nor is the insured informed by the Policy's definitions that there is no coverage if the insured does have more than one residence, or that the insured must be physically present in the insured home *at the time of the loss* in order to be covered. To argue that the insured has to be physically present in the home at the time of the loss contradicts MetLife's "business" definition, which recognizes an insured may occasionally rent the property to others to "use as a residence."

MetLife's argument that Ms. Kelly was limited to one residence, where she had to physically be present at the time of the loss, is simply not supported by reading the entire Policy. Also, limiting consideration of the residence issue to only the Policy's "residence premises" definition is inconsistent with Michigan law, which requires a reading of the entire Policy. Thus, the Policy must be read further, where it provides:

**COVERAGE A – DWELLING**

**We** cover:

A.      the dwelling owned by **you** on the **residence premises**.

(**Exhibit G,** p. 3).

This provision does not mean that Ms. Kelly had to use the home as her primary private residence. It also does not state who must be using it as a private residence, which would coincide with the Policy allowing Ms. Kelly to occasionally rent it to others as a residence. Clearly, it does not inform the insured that she would not be allowed to use the Eastpointe home as a private residence in Michigan and have another residence elsewhere. Finally, as with the definitions, this provision does not expressly state there is no coverage if Ms. Kelly did have more than one residence.

Further reading of the Policy as a whole, to effectuate its intent, reveals that it provides coverage for the insured's personal property no matter where the property is located, and also, when the residence premises is rented to others:

**COVERAGE C – PERSONAL PROPERTY**

**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

**\*\*\***
**Personal Property Not Covered**

**\*\*\***

6. **We** do not cover property of tenants, whether related to **you** or not.

(**Exhibit H,** pp. 1-2).

Importantly, other Policy provisions also do not require the Eastpointe home to be Ms.  Kelly's exclusive residence. Instead, the Policy recognizes that Ms. Kelly could reside elsewhere and MetLife would still provide coverage for certain losses, as long as certain Policy conditions were met:

> **SECTION  I - LOSSES  WE  COVER**  (SPECIAL PERILS)
>
> \*\*\*
>
> **COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES**
> **We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in **Section I – Losses We Do Not Cover**.
>
> \*\*\*
>
> **COVERAGE C – PERSONAL PROPERTY**
> **We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C when loss or damage is caused by **Section I – Broad Named Perils**, except as excluded in **Section I – Losses We Do Not Cover**:
>
> **SECTION I – BROAD NAMED PERILS**
>
> \*\*\*
>
> 1. **Fire or Lightning.**
>
> \*\*\*

8. **Vandalism or Malicious Mischief**
**We** do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire *if the residence was vacant for more than 30 consecutive days* immediately prior to the loss.

9. **Theft**, or attempted theft, . . . **We** do not pay for loss caused by theft:

\*\*\*

C.    from any part of the **residence premises** rented by **you** to others.

**We** do not pay for loss caused by theft that occurs away from the **residence premises** of:

A.    property while in *any other residence* owned, rented to or occupied by **you,** except while **you** are *temporarily residing there* . . .

(**Ex. I,** pp. 1-2) (emphasis added).

## SECTION I – LOSSES WE DO NOT COVER (SPECIAL PERILS)

\*\*\*

3.    **We** do not cover loss or damage to property described in <u>Coverage A</u> and <u>Coverage B</u> which results directly or indirectly from any of the following:

\*\*\*

G. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a domestic appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. *This exclusion does not apply if **you** have used reasonable care to maintain heat in the building*

> *or if **you** shut off the water supply and drained the plumbing and appliance of water.*

> \*\*\*

> J. vandalism or malicious mischief or breakage of glass and safety glazing materials, and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if *the residence was vacant for more than 30 consecutive days* immediately prior to the loss

(**Exhibit I,** pp. 2, 5-6) (emphasis added).

The policy does not expressly state, under exclusions, that losses are not covered if the insured has more than one residence. Thus, if MetLife's narrow interpretation of the definition of "residence premises" is accepted, then it is not consistent with the rest of its Policy that allows Ms. Kelly to occasionally vacate the premises and live elsewhere, such as if she were on an out-of-state job assignment, away at school as a student or was occasionally renting it to others to live in and use as a residence. Clearly, the Policy language, taken as a whole, contradicts MetLife's very restrictive interpretation.

Interpreting the Policy as a whole, its language establishes that coverage would be provided as long as the home was "used" as a private residence. The facts show that Ms. Kelly used her home as a residence during the Policy period. When Ms. Kelly was in Cincinnati, the Eastpointe home was to be her Michigan home – her second residence.

Stated differently, if Ms. Kelly were to occasionally vacate or rent out the premises, as the Policy allows, she would have to live elsewhere. If Ms. Kelly lived elsewhere, then she would have more than one residence. Despite the Policy's vacancy restrictions and occupancy requirements for specific types of coverage, such as frozen pipe coverage and glass (or safety glazing material) coverage, the Policy has no specific occupancy requirement or vacancy restriction for fire loss coverage. Under the relevant Policy provisions, MetLife expressly chose to forego any requirement that the home must be occupied by Ms. Kelly at the time of the fire loss.

Thus, interpreting the Policy as a whole does not prevent Ms. Kelly from having two residences – the subject property and an apartment in Ohio. MetLife erred in interpreting the contract of insurance by not considering the entire Policy as part of its claim decision. Construing the entire policy, MetLife cannot show that the contract of insurance should be forfeited under the policy's residence premises definition merely because Ms. Kelly did not primarily reside at the Eastpointe home at the time of the fire.

## B. MetLife's Policy Regarding Residency Is Ambiguous and Should Be Construed Against the Drafter and In Favor of the Insured.

Apparently, there is more than one interpretation of MetLife's Policy regarding residency – Ms. Kelly's and MetLife's.

An insurance contract is ambiguous if its *provisions* are subject to more than one meaning. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009). When an insurance contract is ambiguous, the policy's terms are construed against the insurer and in favor of coverage. *Auto Club Ins Ass'n v DeLaGarza*, 433 Mich 208, 214; 444 NW2d 803 (1989). When a contract is ambiguous, the court must determine the intent of the contracting parties. *Mich Millers Mut Ins Co v Bronson Plating Co*, 197 Mich App 482, 494-95; 496 NW2d 373, 379 (1992), *aff'd*, 445 Mich 558; 519 NW 2d 864 (1994). The function of the court is to give effect to the parties' intent by examining the whole policy and giving meaning to all terms. *Churchman*, *supra.* It is improper for a court to ignore the plain meaning of the policy's language in favor of a technical or strained construction. *Royce v Citizens Ins Co*, 219 Mich App 537, 542; 557 NW2d 144 (1996).

If Ms. Kelly's interpretation of the definition of "residence premises" is followed, it stays within the spirit of the rest of the Policy. However, if MetLife's is followed, its interpretation negates the other provisions of its own Policy. In any event, if the Court finds the Policy is ambiguous as to its residency requirement, Michigan law requires that it be construed in favor of the insured.

**C. The Michigan Cases Cited by MetLife Regarding Residency Requirements of Property Insurance Contracts are Distinguishable Because They Have Specific Limiting Language Not Found in MetLife's Policy.**

The cited Michigan Supreme Court case regarding residency and property insurance is *Heniser, supra*. Both the policy language (*Id.* at fn 1) and the facts in *Heniser* are distinguishable from the Policy language and facts in this case. For example, unlike the plaintiff in *Heniser*, who admitted he was not going to return to his home because he had sold it (*Id.* at 158, 161-62), Ms. Kelly merely stated that, while being trained for a new position in Ohio, she was going to use the insured home as her Michigan residence.

Unlike here, the *Heniser* court was not faced with the issue of whether the plaintiff "had to live at the insured premises on a full time basis, or whether intermittent occupancy was sufficient" under the policy, because the parties were not disputing that. *Id.* at 163, fn 10.

The *Heniser* court, however, did determine that Frankenmuth's policy language, stating "*where you reside,*" which was part of the definition of residence premises, was an unambiguous statement of coverage. *Id.* at 157, 166-67. "Reside" was defined from the viewpoint of a layperson, not by reference to legal theories, and required "actual occupancy." *Id.* at 163, 172 (citing *Curry v Jackson Circuit Court*, 151 Mich App 754; 391 NW2d 476 (1986)). Thus, for the plaintiff in *Heniser* to have coverage under Frankenmuth's policy, per Frankenmuth's residence

premises definition, the insured had to reside at the insured premises at the time of the loss *and* the property must be shown as the residence premises in the declaration portion of the policy. *Id.* at 167 (emphasis in original).

Here, unlike Frankenmuth's policy, MetLife's definition of residence premises does not include the words "where you reside." Instead, the Policy's definition contains the words "**used** as a private residence by *you*" (emphasis added). This language is *not* limiting like Frankenmuth's. As stated above, it does not require the insured to reside only at the one address. Again, nothing in MetLife's definition gives the insured any notice that, if she has a loss and is occupying a second residence at the time, the loss will not be covered.

Another published case that interprets policy definitions regarding residency requirements is *McGrath*, *supra*. Just as the facts in *Heniser* were distinguishable from the present case, so are the facts in *McGrath*. In *McGrath*, Ms. McGrath, who was elderly and ill, had not lived in her Gaylord home for two years prior to the loss. *Id.* at 444. She had been moved to an apartment by her children to allow them to care for her. *Id.* at 437. Ms. McGrath wanted to return to her home and live there, but her illness prevented it (*Id.*), just as the plaintiff in *Heniser* could not return to the home because he had sold it. Here, Ms. Kelly was not only able to use the Eastpointe home as one of her residences, she did use it. Ms. Kelly is not ill like Ms. McGrath, nor did she sell her home like Mr. Heniser.

Allstate's policy in *McGrath* likewise differs from the Policy here. *Id.* at 440. Allstate's policy used the words "*where you reside and which is principally used as a private residence*" in its dwelling definition (*Id.*), nearly the same words found in *Heniser*. Allstate incorporated its dwelling definition into its residence premises definition by describing residence premises as "the **dwelling**, other structures and land located at the address stated on the Policy Declarations." *Id.* at 440-41. Here, MetLife's Policy does not have a definition for "dwelling" and, as stated above, the residence premises definition basically provides that it is "the dwelling used as a private residence" by the insured (**Exhibit G,** p.2).

The court in *McGrath*, like the Court in *Heniser*, determined Allstate's policy language was an unambiguous warranty that required the insured to reside at the premises at the time of loss. *Id.* at 441. Because Ms. McGrath had lived in an apartment full-time for over two years, and had only visited the home briefly, she was not residing at the Gaylord home at the time of the loss. Thus, her loss was not covered by Allstate's policy. *Id.* at 445.

Although the court in *McGrath* determined there was no coverage for Ms. McGrath's loss, it did recognize that "an insured may be away from a property temporarily" and still be covered under a policy, if certain policy conditions were met. In reaching this conclusion, the court looked at Allstate's entire policy, including its exclusion for frozen pipes. *Id.* at 445. Per Allstate's policy, it would not

provide coverage for frozen pipes if the home was vacant or unoccupied, unless the insured took reasonable steps to prevent such damage. *Id.* So, had Ms. McGrath suffered a loss when she spent winters in Florida prior to her illness, but had taken reasonable steps to prevent such a loss, Allstate could not have denied her coverage based on residency, since its own "exclusion implicitly recognize[d] that the insured may be away from the property, but be covered for the loss." *Id.* That same logic applies here to Ms. Kelly.

MetLife's Policy, similar to Allstate's in *McGrath*, contemplates Ms. Kelly's occasional absence from her home in the Exclusion section of the Policy (**Exhibit I**). To accept MetLife's interpretation that it will only provide coverage if Ms. Kelly was using the property as her one and only residence would negate the effect of its own exclusions.

As the *McGrath* court emphasized, a policy's language should be construed by what a layperson would understand its terms to be. *Id.* at 443-444. This is especially true because the insured is not an expert with regards to the choice of words an insurer uses in its policy. The insured does not participate and has absolutely no voice in the drafting of the policy. If the insured did have any input, there may have been a clearer definition of "insured premises" and "resident premises" here.

Recent unpublished cases have specifically upheld Plaintiff's interpretations of the type of policy language at issue here. See *Durham v. Auto Club Group Ins. Co.*, unpublished opinion *per curiam* of the Michigan Court of Appeals, issued December 13, 2016 (Docket No. 329667) (attached as **Exhibit J**). In *Durham,* the court interpreted residency policy language very similar to that at issue here. It, too, distinguished *Heniser* and *McGrath* as involving interpretation of different policy language and different factual scenarios. *Id.,* at 6. The *Durham* court noted that the *Heniser* court stated "that the exact language of the pertinent policy was critical to its analysis." Also, that the policy in *Durham* "does not require that the plaintiffs 'reside' at the insured premises; it only requires that the insured premises be 'used as a private residence by you.'" *Id.*

The *Durham* court further noted that:

> "in contrast to *Heniser,* plaintiffs averred that they intended to continue using the insured premises in the future as a private residence. While the policy states that the insured premises 'must be used principally as a private residence,' it does not state that the insured premises must [be] the insureds' principal or only private residence."

(*Id.*, pp. 6-7)

As is the case here, the defendant insurer in *Durham* cited, in support of its position, an unpublished Michigan Court of Appeals opinion that interpreted policy language like that in this case. *Banks v. Auto Club Group Ins. Co.*, unpublished opinion *per curiam* of the Michigan Court of Appeals, issued June

18, 2015 (Docket No. 320985) (attached as **Exhibit K**). The policy language in

*Banks* appears to be very similar to that in *Durham* and this case, at least with

respect to defining "residence premises" as requiring that it be "described on the

Declaration Certificate, [and] used as a private residence by you…" *Id.* at 2.

The *Durham* court found that *Banks* did not change the analysis of these

cases:

> While an unpublished opinion may be considered if its
> reasoning is instructive or persuasive, *In re Kanjia*, 308
> Mich App 660, 668 n. 6; 866 NW2d 862 (2014), because
> the facts in *Banks* are different, its reasoning is neither
> instructive [ ] nor persuasive to us in this case . . . Further,
> *Banks* does not discuss the effect of permission granted to
> the insured to be absent from the insured residence and
> that it may remain 'vacant or unoccupied without limit of
> time . . .' Consequently, *Banks* is not persuasive or
> applicable here and does not affect the analysis in this
> case.

> (*Durham, supra* at 7)

The *Durham* court concluded, as this Court should here, that the case law the

defendant insurers rely on is distinguishable on the basis of differing policy language

and facts. "Because the policy language in this case covers the residence premises

stated in the declarations, 'used as a private residence by you,' and grants permission

to the insureds to leave the premises…, a genuine question of material fact remains

for a jury to decide whether plaintiffs continued to 'use[] [the insured home]

principally as a private residence' at the time of the fire loss at issue." *Id.* at 7-8.

There is, at least, a question of material fact as to whether Ms. Kelly used her Eastpointe home as a private residence, per the terms of the Policy. Because the Policy does not require the Eastpointe home to be Ms. Kelly's only residence, she can live in more than one place for the purposes of coverage. However, to what extent Ms. Kelly "used" the Eastpointe home as her residence, and whether that would suffice under the Policy, are disputed questions of fact that should be given to a jury to decide. *Tienda v. Integon Nat'l Ins. Co.,* 300 Mich App 605, 616; 834 NW2d 908, 915 (2013) ("Residence is made up of fact and intention." quoting *Reaume & Silloway, Inc. v. Tetzlaff,* 315 Mich 95, 99; 23 NW2d 219 (1946) (citation and quotation marks omitted)).

### D. Coverage Is Not Excluded Due to the "Business Purpose" Exception in the Policy.

MetLife asserts, almost in passing, that coverage is also not owed because Ms. Kelly allegedly used the entirety of the subject dwelling for a "business purpose." The specific, plain language of the Policy belies that conclusion.

The "residence premises" definition of the Policy, after stating that the insured must use the dwelling as a private residence, goes on to state that "[t]his does not include any portion of a premises used for business purposes." (**Exhibit G,** p. 2). "Business purposes" is defined in the Policy as including:

> 2.   **your** property rented or held for rental by **you**. Rental of the **residence premises** is not considered business when:
>
> > **A.**   it is rented occasionally for use as a residence…

(**Exhibit G,** p. 1)

Therefore, if the entire insured home is "occasionally" rented out by the insured to someone else for use as a residence, it is not being used for a "business purpose" and the home remains a "residence premises" under the Policy. "Occasionally" is not defined in MetLife's policy. "Occasionally" is defined by *Merriam-Webster Dictionary* as "on occasion: now and then". "Occasion" is defined, in relevant part, as "1: a favorable opportunity or circumstance… 2a: a state of affairs that provides a ground or reason… 4a: a need arising from a particular circumstance." (**Exhibit L,** Merriam-Webster Dictionary Online excerpts).

Ms. Kelly had a favorable opportunity or circumstance to pursue a job promotion, which necessitated some training in Ohio. This state of affairs provided a ground or reason, or a need arising from this particular circumstance to have her good friend rent the house in order to keep an eye on it. This was an "occasion" to rent the "residence premises" for use as a residence. Thus, by the terms of the Policy, this "occasional" rental of the home to another did not rise to the level of a "business purpose."

## IV.   CONCLUSION

Plaintiff was using the insured property as a private residence at the time of the loss. Moreover, she was not using it for a business purpose by having the occasion to rent it out to her good friend while she was pursuing job opportunities in Ohio. Therefore, there is coverage under the subject Policy and there is, at a minimum, a genuine issue of material fact whether the claim was properly denied.

WHEREFORE, Plaintiff Beatrice Bragg Kelly respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

MELAMED, DAILEY, LEVITT
& MILANOWSKI, P.C.

/s/Joseph L. Milanowski
By:    Joseph L. Milanowski (P47335)
*Attorney for Plaintiff*
26611 Woodward Avenue
Huntington Woods, MI 48070
T: (248) 591-5000/F: (248) 541-9456
joemilanowski@mdlm-pc.com

Dated:        November 20, 2018

## <u>CERTIFICATE OF SERVICE</u>

I, Lisa M. Borowicz, certify that on November 20, 2018 I electronically filed the foregoing paper with the CM/ECF System for the U. S. District Court, Eastern District of Michigan, Southern Division, which will effectuate service of the same upon all attorneys of record.

I declare that the statements above are true to the best of my information, knowledge and belief.

/s/Lisa M. Borowicz
Lisa M. Borowicz
lisa@mdlm-pc.com
(248) 591-5000