UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEATRICE KELLY, ET AL.,

    Plaintiffs,

v.

METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY,

    Defendant.

_____/

Case No. 18-cv-10982

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#17]**

**I. INTRODUCTION**

Plaintiffs filed this breach of contract action in the Macomb County Circuit Court on February 27, 2018. Dkt. No. 1. The case was properly removed to this Court on diversity jurisdiction grounds on March 26, 2018. *Id.*

Present before the Court is Defendant's Motion for Summary Judgment. Dkt. No. 17. Having reviewed the briefs, the Court finds that no hearing on the Motion is necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the Court will GRANT Defendant's Motion [#17].

## II. BACKGROUND

In 2005, Plaintiff Beatrice Kelly ("Plaintiff Kelly") purchased a home located at 16085 Sprenger Avenue in Eastpointe, Michigan. Dkt. No. 19, p. 6 (Pg. ID 228). Plaintiff Kelly resided at that home with her husband and two children until 2014, when the family moved to Maineville, Ohio for Plaintiff Kelly's job. *Id.* at pp. 6-7 (Pg. ID 228-29); Dkt. No. 17, p. 13 (Pg. ID 95). The family still lives in Ohio to this day. Dkt. No. 19, pp. 7-8 (Pg. ID 229-30); Dkt. No. 17-4, pp. 4-5 184-85); Dkt. No. 20-3, p. 3 (Pg. ID 282).

During the time the family has lived in Ohio, Plaintiff Kelly has rented her Eastpointe, Michigan home to a friend -- Melaundra Floyd -- for $700 per month. Dkt. No. 17, p. 13 (Pg. ID 95). Ms. Floyd signed a one-year lease with Plaintiff Kelly in April 2014 and has been on a month-to-month lease ever since. Dkt. No. 17-4, p. 15 (Pg. ID 195).

In 2016, Defendant Metropolitan Group Property and Casualty Insurance Company issued a Homeowner's Insurance policy to Plaintiff Kelly for her Eastpointe, Michigan home. Dkt. No. 17, p. 11 (Pg. ID 93). The policy went into effect on September 22, 2016 and carried through September 22, 2017. *Id.* While the policy covered the Eastpointe, Michigan home against damages, it did not cover any portion of the home used for "business purposes." *Id.* at p. 12 (Pg. ID

94). Renting out a home is considered a business purpose, unless it is done only on an occasional basis. *Id.*

On December 3, 2016, a significant fire occurred at and damaged the Eastpointe, Michigan home. Dkt. No. 19, p. 8 (Pg. ID 230). The fire was allegedly caused by Ms. Floyd's daughter, CaSandra Floyd, who had fallen asleep while cooking. *Id.* Following the fire, Plaintiffs made an insurance claim, but Defendant rejected it due to alleged misrepresentations in Plaintiffs' application. *Id.* at pp. 8-9 (Pg. ID 230-31). Specifically, Defendant maintained, among other things, that Plaintiffs did not use their property as a private residence and/or it was being used for a business purpose, in violation of the policy agreement. Dkt. No. 17, pp. 14-15 (Pg. ID 96-97).

Plaintiffs now bring the instant suit for a breach of contract and a violation of Michigan's Uniform Trade Practices Act. Dkt. No. 1.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) empowers a court to grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1968).

There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere allegations or denials in the non-movant's pleadings will not suffice, nor will a mere scintilla of evidence supporting the non-moving party. *Id.* at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252.

## IV. DISCUSSION

Defendant moves the Court for an entry of summary judgment, arguing it did not breach its contract with Plaintiffs. Defendant claims Plaintiffs did not use their Eastpointe, Michigan home as a private residence and/or used it for a business purpose, in violation of the Homeowner's Insurance policy. As such, Defendant asserts it was not required to pay for damages to the property. Plaintiffs argue that the Homeowner's Insurance policy is ambiguous in that it does not expressly preclude an insured from having more than one residence while still maintaining coverage. Ultimately, the Court need not resolve that issue. The policy is clear that Plaintiffs were prohibited from using their Eastpointe, Michigan home for a business purpose. In this respect, Plaintiffs violated their Homeowner's Insurance policy.

### A. Defendant did not Breach its Insurance Contract with Plaintiffs Because Plaintiffs used the Subject Property for Business Purposes.

"When federal courts have jurisdiction over state law claims due to the diversity of the parties, the substantive law of the forum state governs." *Yarnell v. Transamerica Life Ins. Co.*, 447 F. App'x 664, 669 (6th Cir. 2011). Under Michigan law, an insurance policy is "an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566 (1992). "An insurance contract is not ambiguous merely because a term is not defined in the contract." *McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439 (2010). Instead, "[a]ny terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries." *Id.* (citing *Citizens Ins. Co. v. Pro—Seal Serv. Grp., Inc.*, 477 Mich. 75, 84 (2007)); *see Bianchi v. Auto. Club of Michigan*, 437 Mich. 65, 71, n.1 (1991) ("The terms of an insurance policy should be construed in the plain, ordinary and popular sense of the language used, as understood by the ordinary person.").

Under Plaintiffs' Homeowner's Insurance policy, the insured property is defined as the "residence premises." Dkt. No. 17-2, p. 8 (Pg. ID 133). Explicitly excluded from the definition of residence premises is any portion of the premises used for "business purposes." *Id.* at p. 9 (Pg. ID 134). Critically, renting out the residence premises is considered a business purpose when it is done on more than

an occasional basis. *See id.* at p. 8 (Pg. ID 133) ("'Business' or 'business purposes' means . . . your property rented or held for rental by you. Rental of the residence premises is not considered business when . . . it is rented occasionally for use as a residence."). Because it is undisputed that Plaintiffs rented out their entire property to their friend Melaundra Floyd, the outcome of the instant dispute will turn on the definition of the term "occasionally."

Plaintiffs note that the term "occasionally" is not defined in the policy agreement. *See* Dkt. No. 19, p. 26 (Pg. ID 248). Hence, the Court must look to the plain meaning of the term. The Merriam-Webster Dictionary defines occasionally as "now and then."[1] The Cambridge English Dictionary offers a similar definition: "not often or regularly."[2] From these definitions, it is clear that the term occasionally, in ordinary usage, means to do something infrequently or irregularly. Here, however, no reasonable juror could conclude that Plaintiffs rented out their home only on an infrequent basis.

Most damaging to Plaintiffs' case: they had been renting out their entire home, without interruption, for more than two and a half years. In fact, Plaintiffs were not living at the home when they purchased the Homeowner's Insurance policy, and never lived at the home during any time in which the policy was in

---

[1] https://www.merriam-webster.com/dictionary/occasionally.

[2] https://dictionary.cambridge.org/us/dictionary/english/occasionally.

effect.  According to Plaintiff Kelly, Melaundra Floyd signed a one-year lease for the home in April 2014.  Dkt. No. 17-4, p. 15 (Pg. ID 195).  After that, Ms. Floyd regularly renewed the lease on a month-to-month basis up until the date of the fire.  *Id.*  Certainly, this cannot be considered an action done infrequently.

Furthermore, whether Plaintiffs would ever return to their Eastpointe, Michigan home was speculative at best.  Notably, very few personal items belonging to Plaintiffs remained in the Eastpointe, Michigan home.  *Id.* at p. 13 (Pg. ID 193).  In contrast, many of the items in the home belonged to Melaundra Floyd, including most of the furnishings.  Indeed, Ms. Floyd had furnished the home with, among other things, exercise equipment, a washer and dryer, a desk, dressers, kitchenware, two bedroom sets, multiple televisions, and a dining room set.  Dkt. No. 17-1, pp. 11-15 (Pg. ID 120-24); Dkt. No. 25-2, p. 7 (Pg. ID 455); Dkt. No. 20-4, pp. 7-8 (Pg. ID 302-03).  In addition, Ms. Floyd paid for all of the utilities in the home.  Dkt. No. 17-4, p. 12 (Pg. ID 192); Dkt. No. 25-2, p. 17 (Pg. ID 465).  She even testified that the electric and gas services were placed in her name.  Dkt. No. 17-1, p. 16 (Pg. ID 125); Dkt. No. 25-2, p. 5 (Pg. ID 453).  Finally, in November 2017, Plaintiff Kelly turned down a job offer that would have brought her back to Michigan.  Dkt. No.20-2, p. 16 (Pg. ID 274).  This is not an action that is consistent with someone who only intended to rent out their home on an occasional basis.

In short, no reasonable juror could decide in Plaintiffs favor. Given that Plaintiffs used their home for a business purpose, this excluded their property from coverage under their Homeowner's Insurance policy. As such, Defendant did not breach the terms of its contract when it rejected Plaintiffs' insurance claims. Accordingly, the Court will Grant Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim.

### B. Because there was no Breach of Contract, Plaintiffs have no Grounds for Recovery Under Michigan's Uniform Trade Practices Act.

In general, Michigan's Uniform Trade Practices Act does not create a private cause of action. *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17 (1994). Rather, recovery under the UTPA is limited to situations where an insurer fails to pay a claim on a timely basis. *See Griswold Props., L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 554 (2007). Under such circumstances, a plaintiff is entitled to a twelve-percent interest payment for the defendant's untimeliness. *See id.* at 556.

Here, as addressed above, Plaintiffs' Eastpointe, Michigan home was excluded from coverage under their Homeowner's Insurance policy, and thus, Defendant had no duty to pay Plaintiffs' insurance claims. This means Plaintiffs have no cause of action arising under the UTPA. Accordingly, the Court will Grant Defendant's Motion for Summary Judgment on Plaintiffs' UTPA claim.

## V. CONCLUSION

For the reasons stated herein, the Court will GRANT Defendant's Motion for Summary Judgment [#17].

IT IS SO ORDERED.

Dated: February 21, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 21, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager